UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SHERRIE TUWANNA DUNN-LANIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-03687-SEB-MJD |
| | ) | |
| INDIANAPOLIS PUBLIC SCHOOLS, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on Defendant's Motion for Summary Judgment.
[Dkt. 50.] The motion was filed on September 10, 2018, pursuant to Federal Rule of Civil
Procedure 56 and is fully briefed. Plaintiff Sherrie Tuwanna Dunn-Lanier filed this
lawsuit against her former employer, Defendant Indianapolis Public Schools ("IPS"),
alleging that IPS denied her promotions based on her race and age in violation of the
Civil Rights Act of 1964 (Title VII) and the Age Discrimination in Employment Act of
1967 ("ADEA"), respectively. We have jurisdiction over the subject matter of this case
pursuant to 28 U.S.C. § 1331. For the reasons detailed below, we <u>GRANT IN PART</u> and
<u>DENY IN PART</u> Defendant's Motion for Summary Judgment.

**<u>Factual Background</u>**

IPS is "the school corporation charged with the education of Indianapolis' urban
youth," Pack Aff. ¶ 2, ECF No. 50-2, and operates within the boundaries of the Southern

District of Indiana. "IPS employs thousands of individuals, including teachers across many schools who are primarily responsible for teaching students." *Id.* ¶ 3. Plaintiff Sherrie Tuwanna Dunn-Lanier resides within the Southern District of Indiana.

From September of 1997 until about August of 2013, Ms. Dunn-Lanier, who is African-American, served in various roles for IPS, including as an elementary school teacher, substitute teacher, and tutor. Dunn-Lanier Dep. Ex. 24, ECF No. 50-1. During that time, she was selected as Teacher of the Year at three different schools. Dunn-Lanier Dep. 75:15-16. In August of 2013, IPS hired Ms. Dunn-Lanier to be a Pre-K Instructional Assistant, Dunn-Lanier Deposition Exhibit 24, at School 44, Dunn-Lanier Dep. 28:15-17. Ms. Dunn-Lanier stated that her transfer to the preschool assistant position was a matter of her own choosing. Dunn-Lanier Dep. 26:19-21.

Beginning in November 2015, Ms. Dunn-Lanier began applying for teaching positions within IPS. Dunn-Lanier Dep. Ex. 32; Pl.'s Resp. to Def.'s Interrog. No. 1. IPS offered Ms. Dunn-Lanier a first-grade teaching position at School 69 on December 7, 2015, at a salary of $52,000. Pack Aff. ¶ 9. At that time, Ms. Dunn-Lanier raised concerns about the salary IPS offered her because she said it was $1500 less than what she had made previously as a teacher. Dunn-Lanier Dep. Ex. 22; ECF No. 53-11. On December 10, 2015, Ms. Dunn-Lanier sent an email to Stephanie Hardaway, an IPS HR employee, inquiring about the salary discrepancy. Dunn-Lanier Dep. 99:2, 11-17. Ms. Hardaway informed Ms. Dunn-Lanier on December 10, 2015, that the offered salary was "in line with the current contract." ECF No. 53-1. IPS stated that it had revised its salary

structure before the 2015-16 school year resulting in "returning teachers and newly-hired teachers [being] . . . compensated differently." Pack Aff. ¶ 7. Ms. Dunn-Lanier said that she contacted various people in IPS about her salary and tried to talk with the Superintendent. Dunn-Lanier Dep. 97:12-23. However, she claimed, IPS never resolved the pay issue. Dunn-Lanier Dep. 100:17-19. Ultimately, IPS hired Natalie Banks on January 11, 2019, instead of Ms. Dunn-Lanier, for the position at School 69. Pack Aff. ¶ 9. Ms. Banks is African American and was born in 1973. *Id.* Over the ensuing year, Ms. Dunn-Lanier applied for several other teaching positions within IPS, but IPS selected other candidates for each position. ECF No. 53-2. The positions for which Ms. Dunn-Lanier applied, but was not selected included:

- a first-grade teaching position at School 99; IPS transferred Leanne Wheeler to the position on December 14, 2015. Ms. Wheeler is Caucasian and was born in 1980;

- a first-grade teaching position at School 58; on January 4, 2016, IPS hired Jillian Hardee who is Caucasian and was born in 1988;

- a first-grade teaching position at School 346; IPS hired Amanda Pereda on January 4, 2016, who is Caucasian and was born in 1990;

- a first-grade teaching position at School 79; IPS hired Patricia Bosley, who is African American and was born in 1967, on January 5, 2016;

- a preschool teaching position at School 60; IPS selected Mary Tuttle who is Caucasian and was born in 1976;

- a first-grade teaching position at School 65; IPS transferred Debra Padgett, who was returning from a leave of absence, to the position instead of hiring a new candidate;

- one of two available second-grade teaching positions at School 42; IPS hired Edward Bloom and Dave Siegelin for the positions. Mr. Bloom is Caucasian and was born in 1952. Mr. Siegelin is Caucasian and was born in 1978.

Ms. Hardee, whom IPS hired for the first-grade teaching position at School 58, resigned on January 29, 2016, a few weeks after she was hired. Pack Aff. ¶ 10. The principal at School 58, Susan Kertes, emailed Ms. Dunn-Lanier on February 12, 2016, to inquire if Ms. Dunn-Lanier was still interested in the first-grade teaching position. ECF No. 53-4; Dunn-Lanier Dep. Ex. 16. Ms. Dunn-Lanier responded to Ms. Kertes's email six days later, on February 18, 2016, stating that she was interested in the position and wanted to learn more about it. ECF No. 53-4; Dunn-Lanier Dep. Ex. 16.

On February 19, 2016, Ms. Dunn-Lanier again contacted School 58 and sent a follow up email to Ms. Kertes. ECF No. 53-4. However, Ms. Dunn-Lanier said when she spoke to Ms. Kertes at a job fair on February 26, 2019, Ms. Kertes informed her that the position had already been filled by another candidate because Ms. Dunn-Lanier "took too long to respond" to the email. Dunn-Lanier Dep. Ex. 17. Ms. Dunn-Lanier stated that, prior to the job fair, she had not received notification that the position had been closed, and in fact, it was still listed as an available position on the IPS website. Dunn-Lanier

Dep. 91:8-12. On March 7, 2016, IPS hired Claire Hindsley, a Caucasian woman born in 1993, for the first-grade teaching position at School 58. Pack Aff. ¶ 10.

After being passed over for several teaching positions, Ms. Dunn-Lanier eventually accepted an assignment with School 44 on May 17, 2016 to continue her work as a preschool classroom assistant. Dunn-Lanier Dep. 45:5-15. Ms. Dunn-Lanier thereafter signed her retirement notice on September 28, 2016. Dunn-Lanier Dep. 46:5-7; Dunn-Lanier Dep. Ex. 8.

Two months prior to the filing of her retirement notice, on July 27, 2016, Ms. Dunn-Lanier filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) accusing IPS of age discrimination based on its failure to award her a teaching position. Dunn-Lanier Dep. Ex. 27. She alleged that the discrimination had occurred over a four-month period, from January 1, 2016, to April 30, 2016, indicating by checking the appropriate box on the form that it was a continuing violation. *Id.* Ms. Dunn-Lanier, who was born in 1961, was approximately fifty-five years of age at the time she filed the charge. *Id.* She filed a second Charge of Discrimination on January 13, 2017, claiming race and age discrimination as evidenced by her failure to be hired for a teaching position. Dunn-Lanier Dep. Ex. 28. In her charge, Ms. Dunn-Lanier claimed that the discrimination occurred between December 1, 2015 and March 4, 2016. *Id.* She also alleged that "the majority of new hires are younger, and White individuals brought in through [the] Teach for America program." *Id.*

On October 13, 2017, Ms. Dunn-Lanier filed this lawsuit after receiving her notice of right to sue from the EEOC. [Dkt. 1.] She amended her complaint on December 22, 2017. [Dkt. 16.] In the motion currently before us, IPS seeks summary judgment on Ms. Dunn-Lanier's race and age discrimination claims.

## Legal Analysis

### I.  Standard of Review

Summary judgment is appropriate when the record shows that there is "'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). There is a genuine issue of material fact when the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *See id.* at 255. However, neither the "mere existence of some alleged factual dispute between the parties," *id.* at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), "will defeat a motion for summary judgment." *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

On a motion for summary judgment, the moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying

those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. *Id.* at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enters., Inc. v. First Chi. Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. *See Celotex*, 477 U.S. at 322; *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The summary judgment standard is applied rigorously in employment discrimination cases, because intent and credibility are such critical issues and direct evidence is rarely available. *Senner v. Northcentral Tech. Coll.*, 113 F.3d 750, 757 (7th Cir. 1997); *Wohl v. Spectrum Mfg., Inc.*, 94 F.3d 353, 355 (7th Cir. 1996). To that end, we carefully review affidavits and depositions for circumstantial evidence which, if

believed, would demonstrate discrimination. However, the Seventh Circuit has also made clear that employment discrimination cases are not governed by a separate set of rules, and thus remain amenable to disposition by summary judgment so long as there is no genuine dispute as to the material facts. *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir. 1997).

## II. Discussion

### A. Request to Strike Exhibits and Statements of Material Fact

IPS challenges Ms. Dunn-Lanier's response to its Motion for Summary Judgment on several procedural grounds. Before addressing the merits, we turn to resolve these procedural issues.

#### 1. Motion to Strike Response Due to Untimely Filing

First, IPS requests that we strike Ms. Dunn-Lanier's response to its motion, arguing that it was untimely. Reply Br. at 2. Local Rule 56-1(b) provides that "[a] party opposing a summary judgment motion must, within 28 days after the movant serves the motion, file and serve a response and any evidence (that is not already in the record) that the party relies on to oppose the motion." S.D. Ind. L.R. 56-1(b). The record shows that IPS filed its Motion for Summary Judgment on September 10, 2018. [Dkt. 50.] Ms. Dunn-Lanier filed her response on October 9, 2018, which was twenty-nine days after IPS filed its motion. [Dkt. 52.] Courts have recognized a "prefer[ence] to decide the case on the merits." *Boutros v. Avis Rent A Car System, LLC,* 802 F.3d 918, 924 (7th Cir.

2015). In our view, considering Ms. Dunn-Lanier's response will not prejudice IPS's case. Thus, we decline to strike Ms. Dunn-Lanier's response brief.

### 2. *Motion to Strike Exhibits and Statements as Inadmissible Hearsay*

Second, IPS seeks to strike several exhibits cited in Ms. Dunn-Lanier's response brief as well as her statement of additional material facts on grounds that they contain inadmissible hearsay. Reply Br. at 3. IPS specifically seeks to strike Ms. Dunn-Lanier's Exhibits 8 and 9 arguing that they "contain inadmissible testimony from out-of-court declarants . . . ." Reply Br. at 3. These documents include Kirshawndra Davis's Letter of Recommendation (Exhibit 8) and Pamela Griffin's Letter of Recommendation (Exhibit 9). ECF No. 53. IPS also challenges Ms. Dunn-Lanier's statement of additional undisputed material facts referencing discussions with Jesse Pratt and Stephanie Hardaway about her salary at School 69, emails she sent to Susan Kertes at School 58, and letters of recommendation by Kirshawndra Davis and Pamela Griffin as inadmissible hearsay. Reply Br. at 4-5.

Federal Rule of Civil Procedure 56(c)(2) provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). However, the nonmoving party does not have to "produce evidence in a form that would be admissible at trial in order to avoid summary judgment." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "[F]or example a substitution of oral testimony for a summary of that testimony in an affidavit, would make the evidence admissible at trial." *Winskunas v. Birnbaum*, 23 F.3d 1264,

1268 (7th Cir. 1994). Courts must often determine whether evidence is inadmissible on grounds that it is hearsay at trial "because '[a]dmissibility of testimony sometimes depends upon the form in which it is offered, the background which is laid for it, and perhaps on other factors as well.'" *Reed v. Ford Motor Co.*, 679 F. Supp. 873, 875 (S.D. Ind. 1988) (quoting *Corley v. Life & Cas. Ins. Co.*, 296 F.2d 449, 450 (D.C. Cir. 1961)). Also "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c) . . . ." *Celotex*, 477 U.S. at 324. Rule 56(c)(1) provides that a party can "cit[e] to particular parts of materials in the record, including depositions, documents, [and] electronically stored information" to show that facts are in dispute. Fed. R. Civ. P. 56(c)(1)(A).

After careful review of the exhibits and fact statements which IPS has challenged as inadmissible hearsay, we will not exclude at this stage of the litigation the cited evidence in passing on the Motion for Summary Judgment. IPS's only objection to the material is on the basis of hearsay. We note, however, that Ms. Dunn-Lanier has included in her witness list for trial the names of Mr. Pratt, Ms. Hardaway, Ms. Kertes, Ms. Davis, and Ms. Griffin. ECF No. 56. The statements from Ms. Hardaway, Ms. Kertes, Ms. Davis, and Ms. Griffin are also included in documents in the record. ECF No. 53. Thus, we cannot say that Ms. Dunn-Lanier will be unable to present the evidence in an admissible form at trial. Accordingly, we reject IPS's request to strike Ms. Dunn-Lanier's Exhibits 8 and 9 and statement of Additional Facts.

### 3. *Motion to Strike Exhibits for Improper Authentication*

IPS also seeks to strike Ms. Dunn-Lanier's Exhibits 8, 9, 10, and 12, arguing she did not properly authenticate them. Reply Br. at 3. As mentioned previously, those exhibits include: Kirshawndra Davis's Letter of Recommendation (Exhibit 8), Pamela Griffin's Letter of Recommendation (Exhibit 9) as well as IPS's 2015-2016 Year Compensation Plan (Exhibit 10), and the Agreement between IPS and Teach for America, Inc. (Exhibit 12). ECF No. 53. Federal Rule of Evidence 901(a) provides that to authenticate evidence "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). One way to authenticate evidence is "by distinctive characteristics such as '[a]ppearance, contents, substance, [or] internal patterns . . . taken in conjunction with circumstances . . . .'" *United States v. Dumeisi*, 424 F.3d 566, 574 (7th Cir. 2005) (quoting Fed. R. Evid. 901(b)(4)).

In applying this authentication rule to each of the exhibits Ms. Dunn-Lanier has referenced in her Response Brief, we note that Exhibit 8 (Davis's Letter of Recommendation) includes characteristics such as the School 44 logo at the bottom of the letter, which leads us to conclude that the exhibit is what it purports to be: a formal letter of recommendation from the principal at School 44, just as Ms. Dunn-Lanier represents. Also Exhibit 9 (Griffin's Letter of Recommendation) contains Ms. Griffin's signature at the bottom of the letter along with references within the body of the letter to specific work Ms. Dunn-Lanier did as an assistant; this indicia support a finding of authentication.

Ms. Dunn-Lanier's Exhibit 10 (2015-2016 IPS Compensation Plan) is referenced in her brief and also submitted as an attachment to IPS's Affidavit from the Director of IPS's Employee Relations. In *Dumeisi*, the Seventh Circuit cited an Eleventh Circuit opinion that "held that Rule 901 'requires only some competent evidence in the record to support authentication . . . .'" *Dumeisi*, 424 F.3d at 575 (quoting *United States v. Elkins*, 885 F.2d 775, 785 (11th Cir. 1989)). Here, IPS itself included the compensation plan as evidence, which allows us to find that Ms. Dunn-Lanier's Exhibit 10 was properly authenticated by the overall record.

However, Ms. Dunn-Lanier's Exhibit 12 (Contract between IPS and Teach for America) has not been properly authenticated. The contract does not include characteristics such as the parties' signatures or any indications of the origin of the contract. Therefore, we strike Exhibit 12.

Having determined that Ms. Dunn-Lanier properly authenticated Exhibits 8, 9, and 10, but not Exhibit 12, requiring that it be stricken from consideration of IPS's Motion for Summary Judgment,[1] we <u>GRANT</u> IPS's motion to strike in part and <u>DENY</u> IPS's motion in part.

### B.  Statute of Limitations

IPS seeks summary judgment on Ms. Dunn-Lanier's age and race discrimination claims arguing that several of the claims raised in her Amended Complaint are time-barred under the applicable statutes of limitations. Br. Supp. at 10. The applicable statute

---

[1] In any event, Exhibit 12 does not affect our analysis.

of limitations for employment discrimination claims varies depending on the type of claim and whether the complainant filed his/or her claim in a state where complainants must have "initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice . . . ." 42 U.S.C.A. § 2000e-5(e)(1) (West, Westlaw through Pub. L. No. 116-29). In Indiana, complainants must file their claims for age discrimination arising under the Age Discrimination in Employment Act (ADEA) with the Equal Employment Opportunity Commission (EEOC) "within 180 days after the alleged unlawful practice occurred . . . ." 29 U.S.C.A. § 626(d)(1)(A) (West, Westlaw through Pub. L. No. 116-29); *see Daugherity v. Traylor Bros.*, 970 F.2d 348, 350n.2 (7th Cir. 1992).[2] Indiana employees must file their Title VII claims with the EEOC "within three hundred days after the alleged unlawful employment practice occurred . . . ." § 2000e-5(e)(1); *see Kennedy v. Reid Hosp. & Health Care Servs., Inc.*, 279 F. Supp. 3d 819, 832 (S.D. Ind. 2017).[3] "Failure to file a timely charge with the EEOC precludes a subsequent lawsuit under Title VII," *Beamon v. Marshall & Ilsley Trust Company*, 411 F.3d 854, 860 (7th Cir. 2005), and the ADEA, *Ajayi v. Aramark Business Services., Inc.*, 336 F.3d 520, 527 (7th Cir. 2003).

Thus, we apply the 180-day statute of limitations to Ms. Dunn-Lanier's ADEA claims and the 300-day statute of limitations to her race discrimination claims under Title VII. Ms. Dunn-Lanier filed her first EEOC Charge on July 27, 2016, alleging age

---

[2] "Indiana is not a 'deferral state' for the purposes of the ADEA" so the 180-day statute of limitations applies. *Daugherity*, 970 F.2d at 350 n.2.

[3] Indiana is a deferral state for the purposes of Title VII, and thus, the 300-day statute of limitations applies instead of the 180-day limit. *Kennedy,* 279 F. Supp. 3d at 832.

discrimination that occurred between January 1, 2016, and April 30, 2016. Dunn-Lanier Dep. Ex. 27. Given the 180-day statute of limitations, any alleged discriminatory conduct occurring before January 29, 2016, is time-barred. Ms. Dunn-Lanier filed her second EEOC Charge against IPS on January 13, 2017, in which she alleged employment discrimination based on race under Title VII, and age under the ADEA, that occurred between December 1, 2015, and March 4, 2016. Dunn-Lanier Dep. Ex. 28. Considering the 300-day statute of limitations for Title VII, only conduct that occurred on or after March 19, 2016, can support a timely Title VII claim. Because of the 300-day statute of limitations and lesser included 180-day statute of limitations for the ADEA, we conclude that all of Ms. Dunn-Lanier's claims of race and age discrimination raised in her second charge are time-barred. Accordingly, the only conduct on the basis of which Ms. Dunn-Lanier may raise claims of discrimination in this lawsuit is that related to her first EEOC charge and her failure to be hired at Schools 42 and 58.

In response to IPS's argument that the majority of her claims in her complaint are time-barred, Ms. Dunn-Lanier contends that because those claims are reasonably related to the viable allegations in her EEOC Charges they should be considered timely or alternatively, they are saved by the continuing violation doctrine. Br. Opp'n at 9-10. We address these arguments in turn.

### 1. *Reasonable Relation Test*

Here, Ms. Dunn-Lanier improperly invokes the reasonable relation test to overcome the statute of limitations. A plaintiff suing for employment discrimination is

required to exhaust her administrative remedies before the EEOC prior to filing suit. *Spellman v. Seymour Tubing, Inc.*, No. 4:06-cv-0013-DFH-WGH, 2007 WL 1141961 at *1 (S.D. Ind. Apr. 12, 2007). The reasonable relation test allows a claim that was not included in the EEOC charge to be incorporated in the complaint if it "'is reasonably related to one of the EEOC charges and can be expected to develop from an investigation into the charges actually raised.'" *Whitaker v. Milwaukee Cty., Wis.*, 772 F.3d 802, 812 (7th Cir. 2014) (quoting *Green v. Nat'l Steel Corp., Midwest Div.,* 197 F.3d 894, 898 (7th Cir. 1999)). This doctrine however does not save claims that are otherwise time-barred. *Spellman*, 2007 WL 1141961 at *1. Accordingly, the reasonable relation test cannot salvage Ms. Dunn-Lanier's otherwise time-barred age and race discrimination claims.

### 2. *Continuing Violation Doctrine*

Ms. Dunn-Lanier's second argument is that the continuing violation doctrine applies to save her otherwise time-barred claims because she "endured multiple years of age and racial discrimination when IPS failed to hire her for numerous teaching positions she applied to starting in 2015, making it difficult to pinpoint the exact date of when the violation(s) occurred." Br. Opp'n at 10. The continuing violation doctrine applies only to hostile work environment claims, *Barrett v. Illinois Department of Corrections.*, 803 F.3d 893, 898 (7th Cir. 2015), not discrete acts of discrimination such as failure to hire claims, *Beamon*, 411 F.3d at 860 (citing *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 110-111 (2002)), such as alleged by Ms. Dunn-Lanier here. Thus, the continuing violation doctrine does not salvage Ms. Dunn-Lanier's claims.

### 3.  *Discovery Rule and Equitable Tolling Doctrine*

Although not specifically referenced in her response, Ms. Dunn-Lanier's argument is appropriately characterized as based on either the discovery rule or the equitable tolling doctrine. However, for the following reasons, Ms. Dunn-Lanier's time-barred claims cannot be revived under either doctrine.

The discovery rule "postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when [s]he discovers [s]he has been injured . . . ." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990). A "plaintiff's injury is tied . . . to the adverse employment action . . . whether . . . [it] is termination, a refusal to promote, or a refusal to hire." *Hardin v. CNA Ins. Cos.*, 103 F. Supp. 2d 1091, 1097 (S.D. Ind. 1999). Here, Ms. Dunn-Lanier acknowledges that IPS failed to hire her on several occasions starting in 2015 when she began applying for teaching positions. Thus, the limitations period began to run on the date she was first not hired for a teaching position with IPS, which was in December of 2015, Pack Affidavit ¶ 9, and the accrual clock restarted for each subsequent time that IPS did not hire her, *Beamon*, 411 F.3d at 860. Therefore, the discovery rule is not applicable here because, you could say, Ms. Dunn-Lanier "discovered" her injury each day she was not hired.

The equitable tolling doctrine "'permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence [s]he is unable to obtain vital information bearing on the existence of [her] claim.'" *Hardin*, 103 F. Supp. 2d at 1098 (quoting *Cada*, 920

F.2d at 451). It is the plaintiff's burden to "show . . . that [s]he could not by the exercise of reasonable diligence have discovered essential information bearing on [her] claim." *Cada*, 920 F.2d at 452. As previously mentioned, Ms. Dunn-Lanier claimed that she "endured multiple years of age and racial discrimination when IPS failed to hire her for numerous teaching positions she applied to starting in 2015, making it difficult to pinpoint the exact date of when the violation(s) occurred." Br. Opp'n 10. Beyond this general allegation, Ms. Dunn-Lanier has not provided any evidence to show why she was unable to determine within the limitations period that IPS's failure to hire her for teaching positions from 2015 to 2016 was the result of unlawful discrimination. Therefore, the equitable tolling doctrine does not apply in this case to save Ms. Dunn-Lanier's otherwise time-barred claims.

Neither the reasonable relation test, the continuing violation doctrine, the discovery rule, nor the equitable tolling doctrine applies to save Ms. Dunn-Lanier's time-barred claims. Thus, we <u>GRANT</u> IPS's Motion for Summary Judgment on Ms. Dunn-Lanier's claims of age discrimination occurring before January 29, 2016, and all of her claims for race and age discrimination asserted in her second EEOC Charge.

### C.    Age Discrimination Claim

Ms. Dunn-Lanier's only claims that are not time-barred relate to her failure to be selected for the positions at Schools 42 and 58 because of her age, in violation of the ADEA. Am. Compl. ¶ 18. IPS seeks summary judgment on this claim arguing that no reasonable jury could find that Ms. Dunn-Lanier has presented a prima facie case of age

discrimination, and, in any event, IPS has proffered non-discriminatory reasons for its hiring decisions that she has not shown to have been pretextual. Br. Supp. at 12.

### 1. ADEA Legal Standard

The ADEA "protects workers forty years of age and older," *Skiba v. Illinois Central Railroad Company*, 884 F.3d 708, 719 (7th Cir. 2018), and "makes it unlawful for an employer . . . 'to fail or refuse to hire . . . any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'" *Carson v. Lake Cty., Ind.*, 865 F.3d 526, 532 (7th Cir. 2017) (quoting 29 U.S.C.A. § 623(a)(1) (West, Westlaw through Pub. L. No. 116-29)). To recover for age discrimination, a plaintiff must prove "'that age was the but-for cause of the challenged adverse employment action.'" *Skiba*, 884 F.3d at 719 (quoting *Carson*, 865 F.3d at 532).

An analysis of Ms. Dunn-Lanier's claims under the ADEA invokes the Seventh Circuit's decision in *Ortiz v. Werner Enterprises., Inc*., 834 F.3d 760 (7th Cir. 2016). According to *Ortiz*, the ultimate legal determination in an employment discrimination case is "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Id.* at 765. In reaching its decision, a court must consider[] the evidence "as a whole, rather than asking whether any particular piece of evidence proves the case by itself . . . ."*Id.* One method that plaintiffs may use to meet their burden of proof is the *McDonnell Douglas* "burden shifting analysis." *Ferrill v. Oak*

*Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499 (7th Cir. 2017). "The *McDonnell Douglas* framework is just 'a formal way of analyzing a discrimination case when a certain kind of circumstantial evidence—evidence that similarly situated employees not in the plaintiff's protected class were treated better—would permit a jury to infer discriminatory intent.'" *Id.* at 499-500 (quoting *Smith v. Chi. Transit Auth.*, 806 F.3d 900, 905 (7th Cir. 2015)).

Here, the parties have crafted their arguments using the *McDonnell Douglas* framework; thus, we first analyze Ms. Dunn-Lanier's ADEA claims using that approach and then evaluate the evidence as a whole. To establish a prima facie case of discrimination for failure to hire claims, plaintiffs "must show that (1) [they are] a member of a protected class; (2) [they] applied for and w[ere] qualified for an open position; (3) despite [their] qualifications, [they] were rejected for the position; and (4) a similarly situated person outside [their] protected class was hired for the position instead, or the position remained open." *Sweatt v. Union Pac. R.R. Co.*, 796 F.3d 701, 709 (7th Cir. 2015); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Courts have alternatively framed the fourth element as requiring the plaintiff to show that "the employer promoted someone outside of the protected class who was not better qualified for the position." *Riley v. Elkhart Cmty. Schs.*, 829 F.3d 886, 892 (7th Cir. 2016). The purpose of the fourth element of the prima facie case "is to eliminate other possible explanatory variables, 'such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable'—

discriminatory animus." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012)

(quoting *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 405 (7th Cir. 2007)).

After a plaintiff provides evidence to produce a prima facie case, the court

presumes discrimination occurred, shifting the burden "to the employer to articulate some

legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*,

411 U.S. at 802. If the employer succeeds in offering a non-discriminatory justification,

"the burden shifts back to the plaintiff to present evidence . . . that the stated reason is a

'pretext,' which, if proven, gives rise to an inference of unlawful discrimination."

*Reymore v. Marian Univ.*, No. 1:16-cv-00102-SEB-DML, 2017 WL 4340352, at *8 (S.D.

Ind. Sept. 19, 2017) (quoting *McDonnell Douglas*, 411 U.S. at 804). To prove that a

defendant's justification is a pretext, "a plaintiff must show 'such weaknesses,

implausibility, inconsistencies, or contradictions in [the employer's] proffered reasons

that a reasonable person could find them unworthy of credence and hence infer that [the

employer] did not act for the asserted non-discriminatory reasons.'" *Id.* at *10 (quoting

*Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007)). In other words,

the court must determine "'whether the employer honestly believes in the [non-

discriminatory] reasons it offers'" for the employment action. *Amos v. Vigo Cty. Council*,

240 F. Supp. 3d 937, 948 (S.D. Ind. 2017) (quoting *Grayson v. O'Neill*, 308 F.3d 808,

820 (7th Cir. 2002)).

### 2.    *Applying the ADEA Legal Standard*

It is undisputed that Ms. Dunn-Lanier has provided sufficient evidence to support the first and second prongs of the prima facie case: that she was in a protected class and that she applied for a position for which she was qualified. Ms. Dunn-Lanier was born in 1961 and at the time of the alleged discrimination she was over forty years old, so she was part of the protected class. Dunn-Lanier Dep. Ex. 27. Ms. Dunn-Lanier has also established her qualifications to be an elementary school teacher including her sixteen years of classroom teaching experience, the three teacher-of-the-year awards she received while teaching at different schools, and her proficient teacher performance evaluations from the 2011-2012 school year, ECF No. 53-6. Br. Opp'n at 18. IPS argues, however, that Ms. Dunn-Lanier has failed to establish the third and fourth prongs of the prima facie case, to wit, that she was rejected for a position for which she was qualified and that less qualified candidates were hired instead. Thus, IPS argues that Ms. Dunn-Lanier cannot establish a prima facie case of age discrimination. Br. Supp. at 12.

IPS first contends that because it offered Ms. Dunn-Lanier a teaching position at School 69 in December of 2015, which she rejected, she cannot satisfy the third prong of the prima facie case. Br. Supp. at 13-14. We reject IPS's argument for the following reasons. It is undisputed that IPS offered Ms. Dunn-Lanier a teaching position in December of 2015 at School 69. Pack Aff. ¶ 9; Dunn- Lanier Dep. 98:3-8. Although that fact may be determinative of whether she was subjected to age discrimination on that occasion, as addressed above, that claim is time-barred. IPS's offering a teaching position to Ms. Dunn-Lanier in 2015 is not determinative of the subsequent positions to which

Ms. Dunn-Lanier applied but was not hired. The fact that IPS previously offered her a teaching position serves only as background evidence to support IPS's contention that it did not discriminate against Ms. Dunn-Lanier in its subsequent hiring decisions at Schools 42 and 58, but that fact alone does not carry the day. Ms. Dunn-Lanier's evidentiary assertions that she had sufficient qualifications for a teaching position and was not selected for any of the open positions at Schools 42 and 58, satisfies the third prong of the prima facie case.

With regard to the fourth prong, IPS contends that Ms. Dunn-Lanier has failed to offer evidence to show that similarly situated individuals outside her protected class were hired over her at Schools 42 and 58. We examine that argument below:

### School 42

To support its claim that Ms. Dunn-Lanier did not establish the fourth prong as related to School 42, IPS first cites the fact that Edward Bloom, the candidate who was hired for one of the two open positions, was born in 1952 and therefore is older than Ms. Dunn-Lanier. Pack Aff. ¶ 11. Although the Seventh Circuit has recognized that a plaintiff may in some circumstances prove a prima facie case based on discrimination "between older and younger members of the protected class," *Kralman v. Illinois Department of Veterans' Affairs*, 23 F.3d 150, 155 (7th Cir. 1994), the evidence here does not support such a conclusion as Mr. Bloom is older than Ms. Dunn-Lanier, who was born in 1961. Thus, summary judgment is warranted on Ms. Dunn-Lanier's age discrimination claim in

connection with IPS's decision to hire Mr. Bloom for a second-grade teaching position at School 42.

IPS also hired Dave Siegelin, who is not in Ms. Dunn-Lanier's protected class, for the other open second-grade position at School 42. Pack Aff. ¶ 11. Ms. Dunn-Lanier alleges that, based on the record, Mr. Siegelin did not have the sixteen years of teaching experience or receive three teacher-of-the-year awards which she had received. Br. Opp'n at 19. In *Riley v. Elkhart Community Schools*, the court concluded that plaintiff produced evidence to support her prima facie case of employment discrimination when she showed that two people outside of her protected age class who had fewer years of teaching experience were hired instead of her. 829 F.3d at 893. Similarly, here, Ms. Dunn-Lanier has produced evidence that Mr. Siegelin was not in her protected age class and had fewer years of teaching experience, yet IPS selected Mr. Siegelin for the position. Considering this evidence, a reasonable jury could conclude that Ms. Dunn-Lanier's prima facie case of discrimination as to her age claim was well-taken. Therefore, the burden now shifts to IPS to proffer non-discriminatory justifications for its hiring decisions.

In response to Ms. Dunn-Lanier's prima facie case, IPS's proffered non-discriminatory explanation is that its decision to hire Mr. Siegelin instead of Ms. Dunn-Lanier was based not only on his teaching qualifications but also on his previous experience working together with the Assistant Principal from School 42 when they were both at another school and he had received a highly favorable recommendation from her. Br. Supp. at 16; Pack Aff. ¶ 11.

Ms. Dunn-Lanier objects to IPS's proffered justification for its decision to hire Mr. Siegelin arguing that it is mere pretext for unlawful discrimination. To support her objection, Ms. Dunn-Lanier again references her qualifications and claims that IPS's employment actions were discriminatory because she was more qualified than Mr. Siegelin. She points to the fact that Mr. Siegelin did not have her "sixteen years of high-performing, quality teaching experience" that included the teacher-of-the-year awards and positive performance evaluations. Br. Opp'n at 19.

Courts have recognized that "where an employer's proffered non-discriminatory reason for its employment decision is that it selected the most qualified candidate, evidence of the applicants' competing qualifications does not constitute evidence of pretext 'unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue.'" *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1180 (7th Cir. 2002) (quoting *Deines v. Tex. Dep't of Protective and Regulatory Servs.*, 164 F.3d 277, 279 (5th Cir. 1999)), *abrogated on not relevant grounds by*, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456-58 (2006)). This approach allows courts "not [to] sit as a kind of 'super-personnel department,' weighing the wisdom of a company's employment decisions; rather [courts are] concerned only with whether the employer's proffered explanation was honest." *Tyler v. Trs. of Purdue Univ.*, 834 F. Supp. 2d 830, 840 (N.D. Ind. 2011) (citing *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 984 (7th Cir. 2001)). "'[C]ourt[s] must respect the employer's unfettered discretion to choose among

qualified candidates.'" *Millbrook*, 280 F.3d at 1181 (quoting *Fischbach v. D.C. Dep't of Corrs.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996)). For example, in *Riley*, the court held that although the plaintiff had more years of experience than the other candidates, that was "the least important factor" to the hiring committee and the other candidates' qualifications were comparable to the plaintiff's in other areas that the committee also reviewed. *Riley*¸ 829 F.3d at 894. Thus, the Court ruled, the plaintiff had not produced evidence to support an inference of unlawful pretext based on her qualifications alone. *Id.*

Here, no reasonable jury could find that Ms. Dunn-Lanier was clearly more qualified than Mr. Siegelin for the teaching position at School 42 such that IPS's justification was mere pretext allowing for an inference of age discrimination. IPS stated that its practice is "to hire the most qualified candidate for a teaching position . . . ." Pack Aff. ¶ 13. To ensure that it selects the most qualified candidate, IPS considers several factors, including "whether the candidate holds a Master's Degree, has prior experience in the same classroom or school, or has prior experience teaching the same educational curriculum that [is] used by the school." *Id.* IPS also takes into account a candidate's prior experience with a particular school when determining whether to hire a candidate. Because Mr. Siegelin had previously worked with the School 42 Assistant Principal at another school and she had recommended him, he benefitted from that prior relationship in terms of getting the nod for the new position. We acknowledge that Ms. Dunn-Lanier had taught for a longer period of time than Mr. Siegelin, but that is not the only relevant hiring/placement qualification under IPS's hiring rubric. As noted above, courts "do not

sit as a 'super-personnel department,' weighing the wisdom of a company's employment decisions . . . ." *Tyler*, 834 F. Supp. 2d at 840 (citing *O'Regan*, 246 F.3d at 984). Ms. Dunn-Lanier has produced no evidence to show that IPS's determination that Mr. Siegelin's prior experience with the School 42 administration was more valuable than Ms. Dunn-Lanier's additional years of experience was a lie. Second guessing this decision, as we have noted, is outside the court's purview.

Ms. Dunn-Lanier also references the challenges she faced during the interview process at School 42 as evidence that IPS's explanation for hiring Mr. Siegelin was unlawful pretext. Br. Opp'n at 21. She stated that she went to School 42 for an interview, but the interview never happened, she "was told that they wanted a demonstration lesson." Dunn-Lanier Dep. 86:3-5. She scheduled the classroom demonstration, but, when she arrived, the assistant principal informed her that the demonstration was supposed to involve the students. Dunn-Lanier Dep. 86:14-22. The demonstration was never rescheduled. Dunn-Lanier Dep. 87:11-12. While the circumstances surrounding IPS's interview process for School 42 are relevant to Ms. Dunn-Lanier's claim of age discrimination they fall short of establishing pretext. Courts have held that evidence of pretext must show "'a lie rather than an oddity or an error.'" *Sweatt*, 796 F.3d at 709 (quoting *Peele v. Cty. Mut. Ins. Co.*, 288 F.3d 319, 326 (7th Cir. 2002)). Although we must and do draw all inferences in favor of the non-moving party on summary judgment, no reasonable jury could conclude that Ms. Dunn-Lanier's challenges in rescheduling the demonstration were anything more "than an oddity or an error," *id.* Thus, we grant IPS's

Motion for Summary Judgment on Ms. Dunn-Lanier's age discrimination claims at School 42.

**School 58**

IPS also argues that Ms. Dunn-Lanier cannot establish a prima facie case of age discrimination with regard to School 58 because Ms. Claire Hindsley, the candidate IPS hired for the position, although outside Ms. Dunn-Lanier's protected age class, was not less qualified than Ms. Dunn-Lanier. Br. Supp. at 17-18. Ms. Dunn-Lanier rejoins that, according to the record, Ms. Hindsley did not have sixteen years of teaching experience or teacher-of-the-year awards; thus, she was less qualified than Ms. Dunn-Lanier. Br. Opp'n at 19. A reasonable jury could find that, similar to the plaintiff in *Riley* who had been a teacher longer than the other candidates, Ms. Dunn-Lanier was more qualified than Ms. Hindsley based on her greater seniority as a teacher. This would suffice to allow a reasonable jury to conclude that Ms. Dunn-Lanier has produced a prima facie case of age discrimination as to her claim relating to School 58.

In response to Ms. Dunn-Lanier's prima facie case, IPS has proffered a non-discriminatory explanation, saying that, on February 12, 2016, the principal at School 58 contacted Ms. Dunn-Lanier to determine whether she was interested in the position, but Ms. Dunn-Lanier did not respond until six days later, on February 18, 2016, by which time "IPS had already moved on to other candidates." Br. Supp. at 5; Dunn-Lanier Dep. 91:10-14; Dunn-Lanier Dep. Exs. 16 and 17. On March 7, 2016, IPS hired Ms. Hindsley for the School 58 first-grade position "because of her strong qualifications, which

included a 3.5 GPA from Purdue University and a 3.91 GPA in her major of Elementary Education, and she also received extremely positive references." Br. Supp. at 18; Pack Aff. ¶ 10.

As previously discussed, to prevail on a claim of pretext, a plaintiff must show that she is clearly more qualified than another candidate based on disparities in qualifications between her and the candidate who was hired instead. *Millbrook*, 280 F.3d at 1180. Here, a reasonable jury could infer that Ms. Dunn-Lanier was clearly more qualified than Ms. Hindsley for the teaching position at School 58, and therefore IPS's justifications for its hiring decision were pretext for unlawful discrimination. Ms. Dunn-Lanier's teaching qualifications included her sixteen years of teaching experience, her three teacher-of-the-year awards from different schools, her proficient performance evaluation from 2011, and her recommendation from the principal at School 44, where she was a classroom assistant from 2013 to 2016. Br. Opp'n at 18; ECF No. 53-8. In contrast, based on the record before us, Ms. Hindsley's only qualifications for the teaching position at School 58 were her undergraduate grade point average and positive references. Pack Aff. ¶ 10. From this, a reasonable jury could find that Ms. Dunn-Lanier was clearly more qualified than Ms. Hindsley for the teaching position at School 58.

This conclusion is buttressed by the facts regarding Ms. Dunn-Lanier's difficulties in February 2016 in getting IPS to clarify whether the teaching position at School 58 was still available. It is undisputed that on February 12, 2016, the School 58 principal, Susan Kertes, contacted Ms. Dunn-Lanier to inform her that IPS had another first-grade

teaching position open and to inquire whether Ms. Dunn-Lanier would be interested in it. Dunn-Lanier Dep. Ex. 16. The parties also do not dispute that Ms. Dunn-Lanier responded in a somewhat delayed fashion to Ms. Kertes's email on February 18, 2016, expressing interest in the position. In that email, Ms. Dunn-Lanier explained that she had been unable to respond earlier because she had been sick and apologized for the delay, acknowledging that she knew IPS "like[s] to move as quickly as possible on placing someone with [the] students, so that they lose as little instructional time as possible." Dunn-Lanier Dep. Ex. 16.

The very next day, on February 19, 2016, Ms. Dunn-Lanier emailed Ms. Kertes again, noting that she had tried to contact Ms. Kertes at the school office. ECF No. 53-4. Ms. Dunn-Lanier finally spoke with Ms. Kertes at an IPS job fair on February 29, 2016, about the position, thereafter memorializing their conversation in a March 4, 2016 email. Dunn-Lanier Dep. Ex. 17. In that email, Ms. Dunn-Lanier noted that Ms. Kertes had informed her that the position had been given to another candidate because Ms. Dunn-Lanier "took too long to respond" to the original email. *Id.*; Dunn-Lanier Dep. 91:10-14. IPS claims that by the time Ms. Dunn-Lanier responded to Ms. Kertes's email on February 18, 2016, "IPS had already moved on to other candidates." Br. Supp. at 5. Yet, Ms. Dunn-Lanier recounts that the position was still listed as open on the job board at that time, indicating that the position had not yet been filled. Dunn-Lanier Dep. 91:8-10, 92:5-10. In addition, IPS did not officially hire Ms. Hindsley for the School 58 position until March 7, 2016, almost three weeks after Ms. Dunn-Lanier emailed Ms. Kertes

expressing interest and approximately one week after Ms. Kertes had indicated that another candidate had already been chosen. Br. Supp. at 5; Pack Aff. ¶ 10.

Considering this evidence as a whole, a reasonable jury could infer that IPS's justification for hiring Ms. Hindsley, who is approximately 30 years younger than Ms. Dunn-Lanier, for the position at School 58 was a pretext for unlawful discrimination and, but for her age, IPS would have hired Ms. Dunn-Lanier. Although Ms. Kertes, the principal at School 58, stated on February 29, 2016, that Ms. Dunn-Lanier's February 18, 2016 email response was untimely, that the position had been offered to someone else, Dunn-Lanier Deposition Exhibit 17; indeed, IPS did not hire Ms. Hindsley until March 7, 2016. Also, there is no evidence in the record to suggest that the application period for the position was closed by February 18; to the contrary, Ms. Dunn-Lanier has adduced evidence to show that the position was still being advertised on the IPS website after that time. Dunn-Lanier Dep. 91:8-10. This evidence undermines the veracity of IPS's explanations that it did not hire Ms. Dunn-Lanier because the position was already filled by someone else by the time she responded, allowing a reasonable jury to conclude that Ms. Dunn-Lanier's evidence of pretext under the *McDonnell-Douglas* analysis raises an inference of unlawful age discrimination against her.  It is true, of course, that a reasonable jury could credit IPS's explanation and find that it had moved on from considering Ms. Dunn-Lanier as a candidate for the School 58 position because she failed to respond to Ms. Kertes's email in a timely manner, but the resolution of this dispute

will require credibility determinations that cannot be made by the Court on summary judgment.

For the reasons discussed above, we find that Ms. Dunn-Lanier has adduced sufficient evidence from which a reasonable jury could infer that IPS's failure to hire her for the first-grade teaching position at School 58 in 2016 was based on her age.[4]

## III. Conclusion

For the foregoing reasons, IPS's Motion for Summary Judgment is <u>DENIED</u> as to Ms. Dunn-Lanier's age discrimination claim based on her failure to be hired for the position at School 58. IPS's Motion for Summary Judgment is <u>GRANTED</u> in all other respects. The case will proceed accordingly.

IT IS SO ORDERED.

Date:  8/2/2019

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[4] We reject as unpersuasive Ms. Dunn-Lanier's argument that IPS's justifications for hiring younger people are pretext based on IPS's contract with Teach for America (TFA). Br. Opp'n at 20. Ms. Dunn-Lanier has argued that IPS "had a pattern or practice of hiring significantly younger individuals for the open positions, instead of teachers who have demonstrated excellence at IPS for sixteen years." *Id.* However, Ms. Dunn-Lanier did not provide evidence to show that Mr. Siegelin or Ms. Hindsley participated in the TFA program and received their positions because of TFA. Therefore, no reasonable jury could infer from the record that Ms. Dunn-Lanier was not hired for the positions at Schools 42 and 58 due to IPS's contract with TFA.

Distribution:

Jeffrey Scott Beck
FAEGRE BAKER DANIELS LLP (Indianapolis)
jeffrey.beck@FaegreBD.com

Andrew Dutkanych, III
BIESECKER DUTKANYCH & MACER LLC (Evansville)
ad@bdlegal.com

Adriana Figueroa
FAEGRE BAKER DANIELS LLP (Indianapolis)
adriana.figueroa@faegrebd.com

Ryan William Sullivan
BIESECKER DUTKANYCH & MACER LLC
rsullivan@bdlegal.com