UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SHERRIE TUWANNA DUNN-LANIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-03687-SEB-MJD |
| | ) | |
| INDIANAPOLIS PUBLIC SCHOOLS, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION TO ENFORCE SETTLEMENT**

Defendant Indianapolis Public Schools ("IPS") has filed a motion to enforce an oral settlement agreement it claims was reached with Plaintiff Sherrie Tuwanna Dunn-Lanier in this age discrimination case [Dkt. 100]. On January 29, 2021, the Court held an evidentiary hearing on Defendant's motion at which Ms. Dunn-Lanier, her counsel, and defense counsel all testified. Having now considered that testimony as well as the documentary evidence submitted by each side, we find, as discussed below, that the parties did in fact reach a valid and enforceable settlement, and thus, that Defendant's motion must be granted.

**Facts**

Ms. Dunn-Lanier filed this lawsuit on October 13, 2017 against her former employer, IPS, alleging that, because of her race and age, IPS failed to hire her for several teaching positions for which she had applied and was qualified, in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act, respectively. On September 10, 2018, IPS moved for summary judgment, which motion

1

was granted on August 2, 2019 as to all but one of Ms. Dunn-Lanier's age discrimination claims.  Thus, the sole claim remaining in this litigation was Ms. Dunn-Lanier's age discrimination claim based on her failure to be hired for a teaching position at IPS School 58.

Throughout the year following the Court's ruling on summary judgment, the parties engaged in multiple rounds of settlement negotiations, both in a formal settlement conference with Magistrate Judge Mark Dinsmore as well as in a series of out-of-court settlement discussions between counsel, but had been unable to reach an agreement.  On September 15, 2020, in advance of the parties' October 13, 2020 pretrial submissions deadline, Judge Dinsmore issued a scheduling order setting a September 29, 2020 telephonic settlement conference before the Court and instructing Ms. Dunn-Lanier to submit a settlement demand prior to the conference.

In response to Judge Dinsmore's order, on September 21, 2020, Ms. Dunn-Lanier submitted a demand in the amount of $247,000, an amount significantly higher than the most recent figures that had been discussed during settlement negotiations between the parties' counsel.  Her letter stated that her demand was based on her net lost wages and lost benefits, including bonuses, sick days, vacation days, 401k match, and her pension payment of 7% of her salary per year, totaling $3,850 per year, or $15,400 for the three-year period since IPS had denied her the School 58 position.  Ms. Dunn-Lanier also requested that a letter from the Superintendent acknowledging her years of service and her receipt of three teacher of the year awards be placed in her personnel file to be used in

response to any future employment inquiries as well as payment of all her attorney fees and court expenses.

On September 29, 2020, the parties appeared for the scheduled telephonic settlement conference with Judge Dinsmore.  Ms. Dunn-Lanier participated personally in the conference call along with her counsel, Ryan Sullivan and Andrew Dutkanych, of the law firm of Biesecker Dutkanych & Macer LLC.  A law clerk from Plaintiff's law firm, Gabrielle Clark, was also present.  For the defense, a representative from IPS, Ahmed Young, attended the conference along with defense counsel, Jeffrey Beck and Adriana Figueroa,[1] from Faegre Drinker Biddle & Reath LLP.  The settlement conference proceeded with Judge Dinsmore speaking first only with Ms. Dunn-Lanier and her attorneys, and then separately with the defense.  Following these discussions with Judge Dinsmore, Ms. Dunn-Lanier reduced her demand to $99,000, to which proposal IPS made a counteroffer of $29,000.  After further negotiations, the parties agreed to submit a settlement bracket, a negotiating tool whereby each side agrees to move its settlement position to a specified range, signaling a willingness to meet in the middle of the two amounts.  Judge Dinsmore suggested to the defense that it propose a bracket of $51,000 for Plaintiff and $49,000 for Defendant, indicating that IPS would settle the case at $50,000.  IPS agreed to that bracket and Judge Dinsmore communicated the settlement proposal to Ms. Dunn-Lanier.

---

[1] Ms. Figueroa has since withdrawn her appearance in this matter.

Ms. Dunn-Lanier, her attorneys, and Ms. Clark all testified at the hearing that Ms. Dunn-Lanier informed Judge Dinsmore that she accepted the IPS offer of $50,000, which included IPS's agreement to place a letter of reference from the Superintendent in her personnel file. After agreeing to accept the $50,000 and the letter of reference from the Superintendent, Ms. Dunn-Lanier inquired whether she could be reinstated for purposes of having $5,000 for each of the four years that had passed since IPS had failed to hire her for the position at School 58, for a total of $20,000, that would be invested into her retirement, or "PERF," account. Judge Dinsmore responded to Ms. Dunn-Lanier's inquiry by predicting that IPS would not agree to that. Ms. Dunn-Lanier's counsel, Mr. Sullivan, testified that he then discussed with Ms. Dunn-Lanier alternatives to reinstatement and they decided to request that Judge Dinsmore inquire of IPS whether it would be willing to attribute a portion of the settlement proceeds to her retirement account. Ms. Dunn-Lanier also asked whether the Superintendent's letter could include mention of the three teacher of the year honors she had received while employed by IPS.

Judge Dinsmore informed the IPS representative and defense counsel that Ms. Dunn-Lanier had accepted the $50,000, and also conveyed Ms. Dunn-Lanier's further inquiries regarding whether IPS could contribute a portion of the settlement fund to her retirement account and include a reference to her teacher of the year awards in the Superintendent's letter. IPS agreed to investigate whether legally a portion of the settlement fund could be contributed to her PERF account since she was no longer an employee of IPS and to attempt to locate evidence confirming that she had been awarded the teacher of the year honors thus allowing that reference to the awards in the letter. The

settlement conference concluded at that point and Judge Dinsmore scheduled a follow-up teleconference for October 5, 2020 at which the parties were to report on the completion of these final elements of the settlement.

At the October 5 teleconference, only the parties' attorneys and Judge Dinsmore participated. Defense counsel reported that he needed additional time to answer Ms. Dunn-Lanier's inquiries, prompting Judge Dinsmore to reschedule the teleconference for October 9, 2020. That same day, on October 5, Mr. Sullivan emailed to Mr. Beck the information necessary to confirm Ms. Dunn-Lanier's teacher of the year awards. Mr. Sullivan sent another email the following day, on October 6, with additional information verifying the teacher of the year awards. In that email, Mr. Sullivan also stated that he needed a response regarding whether IPS could contribute a portion of the settlement proceeds to Ms. Dunn-Lanier's retirement fund. In a telephone conversation later that day, Mr. Sullivan informed Mr. Beck that Ms. Dunn-Lanier wanted $20,000 of the $50,000 settlement fund to be contributed to her retirement account.

Following the October 6 conversation, IPS continued to research the issues raised by Ms. Dunn-Lanier in her requests. On October 8, 2020, Mr. Sullivan and Mr. Beck again spoke by telephone and Mr. Beck reported that IPS had been able to confirm that Ms. Dunn-Lanier had received the teacher of the year awards in question, thus allowing those honors to be included in the Superintendent's letter. Mr. Beck also conveyed that IPS had determined that, under Indiana law, it was permitted to contribute up to 7.5% of the amount of the settlement proceeds allocated to Ms. Dunn-Lanier's lost wages to her retirement account. Mr. Sullivan responded that he would take that information to his

client. Mr. Beck followed up their conversation with an email to Mr. Sullivan reiterating that the 7.5% would come out of the $50,000 settlement fund and that there would not be any additional contribution to Ms. Dunn-Lanier's PERF account.

On the morning of October 9, 2020, Ms. Dunn-Lanier emailed her attorneys, Mr. Sullivan and Mr. Dutkanych, as well as the firm's law clerk, Ms. Hall, stating "so there [are] no misunderstandings" that she understood the terms of the settlement to include "the 50,000 [dollars], the reinstatement with 20,000 [dollars] for [her] retirement account, and the reference letter as [she] agreed to with Judge Dinsmore on September 29, 2020." Exh. 2. Mr. Dutkanych responded to Ms. Dunn-Lanier's email explaining to her that the settlement included a total payment of $50,000, plus reference to the three teacher of the year awards in the Superintendent's letter, and a portion of the $50,000 settlement proceeds being allocated to her retirement account.

Later that same day, Mr. Beck and Mr. Sullivan appeared by telephone before Judge Dinsmore for the scheduled status conference. Mr. Beck reported to Judge Dinsmore the same information he had conveyed to Mr. Sullivan the previous day, to wit, that IPS would include reference to the teacher of the year awards in Ms. Dunn-Lanier's letter and that it would contribute 7.5% of the portion of the $50,000 settlement proceeds that was allocated to lost wages, or $1,500 total,[2] to Ms. Dunn-Lanier's retirement account. Judge Dinsmore told Mr. Sullivan to inform his client that she had received everything she had requested from IPS, instructed Mr. Beck to send the settlement

---

[2] The portion of the $50,000 settlement proceeds attributed to lost wages was $20,000; 7.5% of $20,000 equals $1,500.

agreement to Mr. Sullivan, and told Mr. Sullivan to send it in turn to Ms. Dunn-Lanier to be signed.

Following the October 9 teleconference, Mr. Beck added two clauses to the previously prepared settlement agreement, one stating that the reference letter would include mention of Ms. Dunn-Lanier's teacher of the year awards, and the second providing that 7.5% of the amount of the settlement fund attributable to lost wages, or $1,500, would be deposited into Ms. Dunn-Lanier's retirement account. He sent the agreement to Mr. Sullivan for Ms. Dunn-Lanier's signature, and Mr. Sullivan responded that he would send the agreement to his client and have it signed by October 12, 2020. When Mr. Beck did not receive the signed agreement on the morning of October 12, he emailed Mr. Sullivan early that afternoon to inquire as to when he could expect the signed agreement to be returned. Mr. Sullivan responded, without further explanation, that Ms. Dunn-Lanier would not be signing the agreement.

Upon receipt of Mr. Sullivan's email, Mr. Beck requested another teleconference with Judge Dinsmore, which was scheduled for October 20, 2020. On the day of the scheduled teleconference, Judge Dinsmore issued an order vacating the November 9, 2020 trial date on grounds that the Court had "been informed that the parties in this cause had reached a settlement agreement in principle, subject to finalization of seemingly inconsequential details …." Dkt. 96. However, at the October 20 teleconference, Ms. Dunn-Lanier for the first time indicated to Judge Dinsmore that she would not agree to settle unless IPS agreed to contribute an additional $20,000 into her retirement account, separate from the previously agreed upon $50,000 settlement sum. IPS declined to make

7

an additional contribution and the settlement conference ended without further discussion.

On November 24, 2020, IPS filed its motion to enforce settlement. At an in-person hearing held on January 29, 2021, the Court heard testimony from Mr. Beck, Ms. Dunn-Lanier, Mr. Sullivan, Mr. Dutkanych, and Ms. Hall. Having now considered that testimony as well as the documentary evidence submitted by the parties, we find, for the reasons detailed below, that a valid and enforceable settlement agreement was reached between the parties and that IPS's motion to enforce settlement must therefore be granted.

## Analysis

A settlement agreement in a federal case is treated "just like any other contract," *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 506 (7th Cir. 2007), and is enforceable under ordinary state law principles. *Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 490 (7th Cir. 2002). It is undisputed that Indiana law governs the outcome of this dispute, and under Indiana law, "[i]t is established … that if a party agrees to settle a pending action, but then refuses to consummate [her] settlement agreement, the opposing party may obtain a judgment enforcing the agreement." *Zimmerman v. McColley*, 826 N.E.2d 71, 76 (Ind. Ct. App. 2005) (citation omitted).

The elements required to form a valid and enforceable contract under Indiana law are an offer, an acceptance, consideration, and a manifestation of mutual assent. *Martins v. Hill*, 121 N.E.3d 1066, 1068 (Ind. Ct. App. 2019). Indiana law does not require that contracts be written, "so long as the terms are sufficiently definite, and the parties demonstrate an intent to be bound." *Westbrook v. Hahn*, 829 Fed. App'x 128, 131 (7th

8

Cir. 2020) (citing *Jonas v. State Farm Life Ins. Co.*, 52 N.E.3d 861, 868 (Ind. Ct. App. 2016)). Oral settlement agreements, such as that alleged to have been reached here "are treated no differently than any other binding oral agreement under federal law; an oral settlement agreement is binding and enforceable so long as it contains all terms of the contract to be made." *PSG Energy Group, LLC v. Krynski*, No. 1:18-cv-03008-TWP-TAB, 2020 WL 2059944, at *5 (S.D. Ind. Apr. 29, 2020) (quotation marks and citation omitted). Because this is an employment discrimination case, a requirement that the settlement be "knowing and voluntary" is imposed as a matter of federal law because of the important "federal policy underpinnings" of employment discrimination law. *Dillard*, 483 F.3d at 507 (citations omitted).

At the September 29, 2020 settlement conference with the parties, there was an offer by IPS to settle the case for $50,000 along with a letter of reference from IPS's Superintendent, in consideration for Ms. Dunn-Lanier releasing her legal claims against IPS. All witnesses, including Ms. Dunn-Lanier, testified at the hearing before the Court that Ms. Dunn-Lanier verbally accepted that offer. As such, we find there was a clear mutual manifestation of assent as to the agreement to resolve this lawsuit. There is no evidence or argument that Ms. Dunn-Lanier's acceptance was coerced or uninformed such that we could conclude that her acceptance of that offer was anything other than knowing and voluntary.

After accepting the settlement sum, Ms. Dunn-Lanier inquired whether a portion of the settlement funds could be contributed to her retirement account and whether the letter of reference could include mention of her three teacher of the year awards. There is

no evidence that Ms. Dunn-Lanier ever indicated that her acceptance of IPS's offer was conditioned on a portion of the $50,000 being placed in her retirement account, much less any certain portion of that sum, or reference to the teacher of the year awards in the Superintendent's letter.  To the contrary, Mr. Sullivan testified that he specifically asked Ms. Dunn-Lanier whether, even if IPS were unwilling to attribute a portion of the settlement proceeds to her retirement account, she would still resolve the case for the $50,000 plus the letter of reference from the Superintendent, and she affirmed that she would, by nodding her head and responding, "yes."

Importantly, assuming that these requests were conditions of the agreement, IPS in fact agreed to both conditions when Mr. Beck confirmed with Mr. Sullivan that IPS would include Ms. Dunn-Lanier's teacher of the year awards in its letter of reference and would contribute the maximum percentage of the settlement sum allowable under Indiana law, to wit, 7.5% of the portion of the settlement allocated to lost wages, to her retirement account.  While Ms. Dunn-Lanier now contends that she understood the offer she accepted to include a $20,000 contribution to her retirement account in addition to the $50,000 settlement sum, all the other witnesses unanimously testified that these additional provisions were never part of the parties' agreement.  At best, assuming Ms. Dunn-Lanier's assertions are not merely a case of settler's remorse but instead amount to an argument that their oral settlement agreement is not enforceable based on her unilateral mistake, such a misunderstanding "is not sufficient grounds on which to rescind an agreement under Indiana law." *Steart v. Allen County Jail*, No. 1:16-CV-138-TLS, 2018 WL 3238552, at *2 (N.D. Ind. July 3, 2018) (citing *Carlson v. Sweeney Dabagia,*

*Donoghue, Thorne, Janes & Pagos*, 895 N.E.2d 1191, 1199 (Ind. 2008) (collecting cases)). Rather, "[a] contract generally may not be avoided for unilateral mistake unless the mistake was induced by the misrepresentation of the opposite party." *Ball v. Versar, Inc.*, 454 F. Supp. 2d 783, 807 (S.D. Ind. 2006) (quoting *Mid-States General & Mechanical Contracting Corp. v. Town of Goodland*, 811 N.E.2d 425, 435 (Ind. Ct. App. 2004)). Here, there is no allegation that IPS ever represented or otherwise implied that its offer included additional funds beyond the $50,000. We therefore hold that Ms. Dunn-Lanier entered into an enforceable settlement agreement and her assertions of unilateral mistake are insufficient to void the valid settlement agreement.

  One final matter: Defendant has requested that it be permitted to submit an account of the costs it has incurred in enforcing the settlement agreement through the additional attorney fees required in conducting further litigation after Ms. Dunn-Lanier refused to finalize the agreement that she, herself, admits having entered into. We appreciate the interests that prompt Defendant's request, as it is clear that through Ms. Dunn-Lanier's refusal to follow through on her agreement she unnecessarily multiplied the proceedings and delayed resolution of this case. Given what we regard as her unjustified refusal and the resultant delay, we agree with Defendant that an attorney fee award in its favor is justified here, given that a "[r]efusal to abide by the terms of a settlement agreement can constitute bad faith, entitling the wronged party to attorney's fees." *Rakestraw v. Corp. for Community Housing*, No. 1:04-CV-311-TS, 2005 WL 2030868, at *1 (N.D. Ind. Aug. 19, 2005) (quoting *Interspiro USA, Inc. v. Figgie Int'l, Inc.*, 815 F. Supp. 1488, 1522 (D. Del. 1993)).

However, given the obvious economic disparity between the parties to this litigation and their respective abilities to absorb the financial burdens of such, rather than shifting the entirety of Defendant's added costs to Plaintiff due to her refusals to finalize her agreement to settle, the Court hereby orders and directs that Ms. Dunn-Lanier pay Defendant $1,000 as an offset to its costs incurred in filing the Motion to Enforce the Settlement and preparing for and attending the related hearing. Whether this payment is made in the form of a deduction from the total settlement amount of $50,000 payable to Plaintiff, or by separate payment to Defendant, we leave to the parties to determine. But this $1,000 assessment is to be paid forthwith and Plaintiff's counsel is expected by the Court to facilitate the payment.

## Conclusion

For the reasons detailed above, Defendant's Motion to Enforce Settlement [Dkt. 100] is <u>GRANTED</u>, in accordance with the terms of the settlement agreement memorialized in Defendant's Exhibit D. Plaintiff is ordered to pay forthwith $1,000 to Defendant to offset the attorney fees Defendant incurred in filing and proving up the motion to enforce the parties' settlement agreement. The dismissal of this cause of action on the Court's docket should be entered without delay as well based on the settlement.

IT IS SO ORDERED.

Date: _____2/9/2021_____     _____
                                   SARAH EVANS BARKER, JUDGE
                                   United States District Court
                                   Southern District of Indiana

Distribution:

Jeffrey Scott Beck
FAEGRE DRINKER BIDDLE & REATH LLP (Indianapolis)
jeffrey.beck@faegredrinker.com

Andrew Dutkanych, III
BIESECKER DUTKANYCH & MACER LLC (Indianapolis)
ad@bdlegal.com

Taylor Jon Ferguson
BIESECKER DUTKANYCH & MACER LLC (Indianapolis)
tferguson@bdlegal.com

Daniel Ryan Roy
FAEGRE DRINKER BIDDLE & REATH LLP (Indianapolis)
daniel.roy@faegredrinker.com

Ryan William Sullivan
BIESECKER DUTKANYCH & MACER LLC (Indianapolis)
rsullivan@bdlegal.com